UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**ROBERT dePERRODIL**                          **DOCKET NO.: 13-849**

**VERSUS**                                     **JUDGE RICHARD T. HAIK**

**BOZAVIC MARINE, INC., ET AL**                **MAGISTRATE PATRICK J. HANNA**

JOINT PRE-TRIAL ORDER

Trial Date: May 18, 2015 at 9:30a.m.

Pretrial Conference Date: April 28, 2015 at 9:30a.m.

Type of Trial - Bench

Estimated Length of trial is 2 court days.

| **Trial Attorneys Attending** | **Party/Claim Represented** |
|---|---|
| Joseph F. Gaar, Jr.<br>Jason M. Welborn<br>Jacob H. Hargett | Claimant, Robert dePerrodil |
| Georges M. Legrand<br>Jordan G. McFaull | Defendant, Bozovic Marine, Inc. |
| Dawn Danna Marullo<br>Scott B. Kiefer | Intervenor, Liberty Insurance Corp. |

1.    **Claims and Responses:**

   A.    **Robert de Perrodil**

   This cause of action arises under the Court's Admiralty and General Maritime jurisdiction pursuant to 28 U.S.C. § 1333, et. seq. On November 13, 2012, Robert dePerrodil was a passenger aboard the M/V THUNDER STAR, a vessel owned and operated by defendant, Bozovic Marine, Inc., which was traveling in the Gulf of Mexico. At the time of the subject accident, the captain of the M/V THUNDER STAR, Petar Bozovic, was negligently operating that vessel in severe wind and sea conditions. Specifically, while the M/V THUNDER STAR was returning to port at full throttle, it encountered multiple six to eight foot seas on her port broad side, which ultimately caused the M/V THUNDER STAR to become "air borne" thus causing Robert dePerrodil to lose his footing and sustain injuries. At the time of the accident at issue, Mr. dePerrodil was an invitee aboard the M/V THUNDER STAR, a vessel owned and

operated by defendant, Bozovic Marine, Inc. Specifically, Mr. dePerrodil complains that the M/V THUNDER STAR, and its captain, failed to properly operate/navigate the vessel at issue, and was operating at an unsafe speed and in an erratic fashion under the circumstances, failed to post a proper lookout, failed to take reasonably evasive action, and was not operated in a prudent manner. Defendant, Bozovic Marine, Inc., is liable for the negligence and/or fault of its employee/captain/owner, Petar Bozovic, who piloted the M/V THUNDER STAR on November 13, 2012. Petar Bozovic, the employee/captain/owner of Defendant, Bozovic Marine, Inc., violated Rule 6 of the Inland Navigational Rule - Safe Speed, by operating the M/V THUNDER STAR at a high rate of speed in dangerously rough sea conditions. Petar Bozovic an employee/captain/owner of Defendant, Bozovic Marine, Inc. violated Rule 6 of the Inland Navigational Rule - Safe Speed, by operating the M/V THUNDER STAR at full throttle in six to eight foot seas.

## Issue of Liability and Fault of Bozovic Marine, Inc.:

A ship owner owes to passengers the duty of exercising "reasonable care under the circumstances of each case." *Kermarec v. Compagnie*, 358 U.S. 625, Sp. Ct. (1958). The circumstances here include, the experience of the crew, the type of carrier involved, the dangers to the passengers peculiar to that type of carrier, the carrier's degree of control over the passengers, and the carrier's ability to take precautions against such dangers. The "active control duty" theory of liability of a vessel owner under Section 905(b) of the LHWCA, requires a shipowner to exercise reasonable care to prevent injuries to a longshoreman in areas that remain within the active control of the shipowner. This would include the negligence of the captain or crew.

Plaintiff alleges that he is entitled to recovery under the Court's Admiralty and General Maritime jurisdiction as a result of the captain of the M/V THUNDER STAR's negligence and violation of navigational rules. As a result of the negligence and rule violations, the plaintiff claims that Defendant, Bozovic Marine, Inc., through the actions of its captain owner Petar Bozovic, caused serious and disabling injuries to the plaintiff's back and body as a whole. Plaintiff has made claims for damages, including:

a.  Past medical expenses;
b.  Future medical expenses;
c.  Past lost wages;
d.  Future loss of earning capacity;
e.  Past and future pain and suffering;
f.  Past and future mental and emotional anguish; and
g.  Past and future loss of enjoyment of life.

Defendant had previously pled limitation of liability as a defense in its Answer to the Complaint. (Rec. Doc. 5) Defendants, below have agreed to withdraw that defense. As such, plaintiff will not respond to that defense.

At the time of the accident at issue, the M/V THUNDER STAR was being captained by Petar Bozovic, who is one of two owners of Bozovic Marine, Inc. Based on the testimony provided by Captain Bozovic, he did not know, and did not check, what the weather conditions

or sea conditions would be in the Gulf of Mexico prior to the voyage on November 13, 2012. Captain Bozovic also testified that he was well aware that the L/B ATTITUDE was not on location at the Clayton Williams platform, before he entered the Gulf of Mexico. Lastly, Captain Bozovic testified that prior to leaving port at Venice, Louisiana, on the date of accident, he knew exactly where the Main Pass 48 platform was located and when he got to the mouth of the Bayou Baptiste Collette waterway, he could clearly see that the L/B ATTITUDE was not on location. Despite the foregoing, Captain Bozovic negligently elected to enter the rough seas and high winds in the Gulf of Mexico. Captain Bozovic failed to operate his vessel in a safe manner given the prevailing sea conditions, which ultimately injured the plaintiff. Bozovic Marine, Inc. failed in its duty as owner of the M/V THUNDER STAR to exercise due care in allowing captain Bozovic to operate the M/V THUNDER STAR at the time of the accident at issue. *Tug Ocean Prince, Inc. v. United States*, 584 F.2d 1151, 1155 (2nd Cir. 1978).

Plaintiff would submit that defendant, Bozovic Marine, Inc. and Captain Petar Bozovic exhibited negligence and imprudence in operating the small crew boat vessel at an excessive speed for the extremely dangerous sea conditions and further in his erratic gunning and pulling back on the throttle between waves. Whatever the nature of the vessel, the rules concerning the responsibility for their operations are the same. If the owner retains control, he remains liable for all damages arising out of its operation whether the charter be only for a single voyage ("voyage charter") or for a fixed time ("time charter").

Plaintiff asserts that Defendant, Bozovic Marine, Inc. is in violation of Rule 6 which governs the speed of a vessel. Rule 6 states:

§ 2006. - Safe speed (Rule 6):

Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions.

In determining a safe speed the following factors shall be among those taken into account:

(a) By all vessels:

(i) the state of visibility;

(ii) the traffic density including concentration of fishing vessels or any other vessels;

(iii) the maneuverability of the vessel with special reference to stopping distance and turning ability in the prevailing conditions;

(iv) at night the presence of background light such as from shores lights or from back scatter of her own lights;

3

(v) the state of wind, sea, and current, and the proximity of navigational hazards;

(vi) the draft in relation to the available depth of water.

(b) Additionally, by vessels with operational radar:

(i) the characteristics, efficiency and limitations of the radar equipment;

(ii) any constraints imposed by the radar range scale in use;

(iii) the effect on radar detection of the sea state, weather, and other sources of interference;

(iv) the possibility that small vessels, ice and other floating objects may not be detected by radar at an adequate range;

(v) the number, location, and movement of vessels detected by radar; and

(vi) the more exact assessment of the visibility that may be possible when radar is used to determine the range of vessels or other objects in the vicinity.

Defendant denies that it was negligent, and avers that the plaintiff was "wholly or partially at fault for failing to intervene, if he felt the sea conditions were unsafe, and failing to properly brace himself or sit down on a settee in the wheelhouse or in the passenger area below, before the accident". Defendants also argue that the plaintiff "assumed the risk of his injuries and that it had no obligation under the General Maritime Law to warn plaintiff of open and obvious conditions."

Plaintiff would agree generally that while a vessel owner is "not an absolute insurer" of a passenger's safety, the actions of Captain Bozovic were the sole cause of the accident at issue. Plaintiff would aver that the accident at issue was 100% the fault of Captain Petar Bozovic.

Captain Bozovic will testify at trial (as he did in his deposition), that:

1. He was the captain of the vessel, and that as the captain of his vessel, he and he alone is responsible for its navigation.

2. That he is responsible for all persons onboard his vessel, and that all passengers are under his authority as captain.

3. That as the captain, he is responsible for passenger safety and positioning.

4. That as the captain, he is responsible for the safe operation of his vessel.

4

5. That as the captain, he is responsible for the safety of everyone onboard his vessel.

6. That as the captain, he is responsible for checking and understanding the weather and sea conditions.

7. That on the day of the accident at issue, he did not check the weather, nor did he communicate with any other vessels.

8. That he did not try to call or contact the L/B ATTITUDE on the day of the accident to determine its location.

9. That as the captain and master of the vessel, he is responsible for knowing the route of the voyage to be taken.

10. That he never at any time, asked Mr. dePerrodil to go down below into the passenger compartment.

11. That he did not see any problem in passengers being in the pilothouse.

12. That having a passenger in the pilothouse while the vessel is underway is not unusual.

13. That he and his wife are the sole owners of Bozovic Marine.

14. That when he left the dock in Venice, he did not know the name of the lift boat to which he was headed on the day of the accident.

15. That when he left the dock in Venice, he did not know if the lift boat was on location.

16. That he could have idled back in to shore after turning around 5 miles offshore.

17. That he told plaintiff that the lift boat was not on location, but proceeded into the Gulf waters anyway.

18. That the 8 foot wave that hit the M/V THUNDER STAR, hit it broadside.

19. That the top speed of the M/V THUNDER STAR is 20 to 21 knots. And that he was doing 18 to 19 knots going out to the location.

20. That the winds on the morning of the accident were 25 to 40 knots.

21. That he only watched the local TV news from the previous night, to get the weather for the following morning.

22.     That he did not check the NOAA Maritime Weather Forecasts for the day in question.

23.     That he knew there was a weather "front" coming in, and that it would be rough in the Gulf.

24.     That he had no idea how high the seas would be in the Gulf before leaving port.

25.     That he could already see there was no liftboat at the platform where he was headed, and did not stop, or at least slow down, and call the platform, attempt to hail the liftboat, or anyone with Clayton Williams, Madere Towing, or PEI to determine if the liftboat was in route or delayed by weather.

26.     That he did not check the NOAA Weather Radio before or during this voyage.

27.     That he as Master of the M/V THUNDER STAR, was responsible for every action on his vessel including all navigational decisions, operational decisions, and passenger placement and safety rules.

28.     That he was operating his vessel at full speed to get on step and in accelerating to full speed or high speed and in "pulling back" or reducing his speed for five to ten minutes immediately prior to being struck nearly broadside by an eight foot wave.

Based on the above, there is no question but that Captain Bozovic was solely at fault in causing the accident at issue and plaintiffs injuries.

The Fifth Circuit has adopted the high degree of care standard. *In re Dearborn Marine Services*, 499 F. 2d 263, 278 (5th Cir. 1974), (master not exonerated from duty to moor vessel in safe location by use of reasonable diligence); *McCormick Shipping Corp. v. Stratt*, 322 F. 2nd 648 (5th Cir. 1963); *Stanga v. McCormick Shipping Corp.* 268 F. 2nd 544 (5th Cir. 1959); *Peninsular & Occidental S.S. Co. v. NLRB*, 98 F. 2d 411, 414 (5th Cir. 1938); *Porche v. Gulf Mississippi Marine Corp.* , 390 F. Supp. 624, 632 (E.D. La. 1975), (all applying high degree of care). Thus, even though the burden of proof is on the plaintiff, under these standards, evidence of the "smallest negligence" on the part of the carrier would render the carrier liable for damages.; *The City of Panama*, 101 U.S. at 462, 25 L. Ed., at 1064 (1879): Norris, § 36 at 69.

As a result of the accident at issue, plaintiff, Robert dePerrodil, has undergone lumbar surgery performed by Dr. Neil Romero and makes a claim for past lost wages; future loss of earning capacity; past medical expenses; future medical expenses; past and future physical and mental pain and suffering; loss of enjoyment of life; and other damages, including prejudgment interest, as may be proven at the trial of this matter.

The defendant has indicated its intention to argue that the plaintiff's injury at L3-4 pre-existed the subject accident. The defendant's arguments are based on a 2009 CT scan and Dr. John Martin's treatment in 2009. However, Dr. Martin testified in his deposition that in 2009 the plaintiff only had two visits with him and plaintiff did not have any radicular symptoms at that time. Further, Dr. Romero confirmed Dr. Gammel's testimony, by testifying that the central disc herniation at L3-4 was acute and caused by the subject accident.

## Issue of Medical "Write Offs" and the Collateral Source Rule:

The defendants also assert that they are entitled to a credit for medical "write offs" by the plaintiffs various health care providers, which were not paid by plaintiffs employers comp carrier, citing *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373 (5th Cir. 2012).

The general principals of the Collateral Source Doctrine clearly apply to this situation. To explain, there is no question that the LHWCA obligation met by PEI through its carrier, Liberty Insurance Company, is collateral to and independent of the liability of Bozovic Marine. Based upon traditional principals of Maritime Law, the LHWCA obligation met by PEI in this instance is a benefit that the plaintiff has received by operation of his employment with the LHWCA employer. In essence, Mr. dePerrodil provided work for PEI, in exchange for rights granted under General Maritime Law and the LHWCA. Of these rights, he is to be compensated through LHWCA benefits for medical payments for injuries sustained while in service of his job with PEI. Thus, while plaintiff did not pay money for this fringe benefit, he clearly provided his work services as a benefit to his employer, in exchange for those rights provided as a matter of law. For this reason, Bozovic Marine is not allowed to take advantage of the LHWCA obligation met by PEI, and offset it against the amount of medical bills actually charged. Indeed, probably the best recapulation is found in *Davis v. Odeco, Inc.*, where the Court stated:

"Generally, however, when an employee has bargained for a fringe benefit like health or life insurance as an additional consideration for employment, compensation received by the employee under that fringe benefit should not be deducted from the damages awarded to the employee as a result of the employer's negligence. Since the employee is already contractually entitled to that benefit, allowing the employer to deduct such compensation would both under compensate the employee, and provide the employer with an undeserved windfall."

This issue was recently decide by Magistrate Judge Patrick Hanna, in the matter of *Blanchard v. US*, 2014 U.S. Dist. Lexis 131958, AMC 2888 (W.D. La. 2014), which had a very similar cure issue. In *Blanchard*, the plaintiff brought a claim under General Maritime Law against the United States, as the owner and operator of the *M/V MISSISSIPPI*. The plaintiff also brought a claim for damages against Stallion under the Jones Act and General Maritime Law as well as a claim for failure to timely or adequately pay maintenance and cure. Stallion filed the Cross Claim against the United States seeking indemnity for any maintenance and cure benefits paid or to be paid to the plaintiff. Following the trial on the merits, the Court ruled that Stallion was not negligent under the Jones Act, and denied the plaintiff's claims that Stallion unreasonably failed to timely or adequately pay maintenance and cure. The Court also found that the United States to be 100% at fault for the accident which caused the damages at issue. Since Stallion was found free from fault, Judgment was rendered in favor of Stallion and against the United States for recovery for maintenance and cure benefits paid to Blanchard. Thereafter, the United States argued that its obligation to pay the plaintiff's medical expenses twice, once to the plaintiff and once to Stallion, and the Court's application of the Collateral Source Rule, to allow that to occur was erroneous.

7

In analyzing the issue presented, the *Blanchard* Court stated,

> "[T]he right to cure in the event the seaman is injured or falls ill while in service of the ship is a benefit the plaintiff obtained by accepting his employment and being exposed to the perils of working aboard a vessel". It assures the seaman that he will entitled to curative medical treatment for either illness or injury funded by his employer until the point he reaches maximum medical improvement. In that sense, the character of cure is in the nature of a fringe benefit and the source is completely independent of the tortfeasor."

Judge Hanna stated in his reason for ruling, that the outcome of the application of the Collateral Source Rule *"would be no different if the plaintiff had received workers compensation benefits or private health insurance benefits instead of cure". Blanchard at 10.* (Emphasis Added). In making its determination, the Court reviewed *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296 (5th Cir. 2008), *David v. Odeco, Inc.*, 18 F.3d 1237 (5th Cir. 1994), and the *Manderson* case. Judge Hanna, the Magistrate Judge for the Western District, stated that the Court interprets those cases as placing the policy of requiring the tortfeasor to bear the costs of its conduct as a priority in applying the Collateral Source Rule even at the expense of making the tortfeasor pay more than it might otherwise pay. *Blanchard at 10.*

The *Manderson* case is clearly distinguishable from the present one. First, it is obvious from the facts of the Manderson decision, that it dealt with a situation where the employer and the tortfeasor were the same entity. Perhaps even more distinguishing, the Court found that there was no liability and thus no tortfeasor at all. Rather the entire issue regarding maintenance and cure benefits, and the application of the Collateral Source Rule, centered around whether or not the *employer* was entitled to only reimburse the plaintiff the actual amount paid to medical care providers, rather than the charged amount. Lastly, another distinguishing point is that the Fifth Circuit has repeatedly held that an injured seaman may recover maintenance and cure only for those expenses "actually" incurred. Based on the years of precedence in the Fifth Circuit, the Manderson plaintiff was specifically limited to only recover what was "actually paid. The Manderson holding is limited to those situations where the employer and the alleged tortfeasor are the same person. In analyzing this issue, the Court limited the application of the Collateral Source Rule to the situation to where the seaman alone has purchased medical insurance. When this sole situation arises, the Court held that the ship owner is not entitled to set off from the maintenance and cure obligation monies that the seaman received from his insurer. *Manderson*, 673 F.3d at 381, citing *Gautier v. Crosby Marine Services, Inc.*, 752 F.2d 1085, 1089 (5th Cir. 1985). Importantly, the Court did not, and apparently has not, addressed the situation when the employee and the alleged tortfeasor are two (2) different entities. For this reason, the holdings and dicta contained in *Manderson* do not support Bozovic's argument that it is only obligated to pay the actual amounts paid by Liberty Insurance Company.

## Issue of expert reports by plaintiffs treating physicians under the Courts Scheduling Order:

Another issue that the defendants have indicated they will assert at trial is that plaintiffs treating physicians, Dr. Neal Romero and Dr. Scott Gammal, should not be allowed to testify as to their treatment and/or opinions relating to ongoing medical treatment of plaintiff after the

deadline for the submission of "expert reports" as set forth in the Courts Scheduling Order.

As the Court is aware, both *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d , (5th Cir. 2004), as well as Fed. R. Civ. P. 26(a)(2)(A) and (B) applies to this issue and essentially states: [T]he requirement of a written report in paragraph (2)(B) applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.

The trial court's Scheduling Order required Hamburger to designate his experts by February 1, 2002, but Hamburger did not designate Dr. Fitzgerald as an expert until April 30, 2002. Unlike the expert report requirement of Rule 26(a)(2)(B), the expert designation requirement of Rule 26(a)(2)(A) applies to all testifying experts. Therefore, if the trial court had the discretion to bar Dr. Fitzgerald as an expert witness based solely on Hamburger's untimely designation of Dr. Fitzgerald as an expert, the Court need not reach the issue of whether Dr. Fitzgerald is an expert from whom an expert report is required by Rule 26(a)(2)(B).

The Fifth Circuit Court in *Hamburger* stated that, in reviewing the trial court's exercise of its discretion to exclude experts not properly designated by considering four factors: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. Geiserman v. MacDonald, 893 F.2d 787, 791 (5th Cir. 1990). Hamburger first *explains that he failed to timely designate Dr. Fitzgerald because his "counsel did not believe* that a treating physician was the type of witness from whom an expert report was necessary." While this explanation addresses why Hamburger did not obtain and serve a written report from Dr. Fitzgerald pursuant to Rule 26(a)(2)(B), it does not address why Hamburger failed to timely designate Dr. Fitzgerald as a testifying expert under Rule 26(a)(2)(A), and no other explanation is given.

Although the Fifth Circuit has not specifically identified the circumstances under which a treating physician would be required to disclose a written report, the district courts in this circuit have generally concluded that the treating-physician exception applies only to opinion testimony based on the physician's personal knowledge of the examination and treatment of the party. If the opinion testimony is based on information learned outside the course of treatment, then a written report is required. *See, e.g., Martin v. Geico Gen. Ins. Co., 2002 WL 34370891, at *1 (N.D. Tex. Apr. 15, 2002) (Boyle, J.)* (order) (where proffered expert testimony extended beyond scope of doctors' "personal knowledge as treating physicians," doctors must fully comply with Rule 26(a)(2)); *Lowery v. Spa Crafters, Inc.,* 2004 U.S. Dist. LEXIS 16072, 2004 WL 1824380, at *2 (W.D. Tex. Aug. 16, 2004) (the treating-physician exception is "limited to facts and circumstances developed during the care of the patient"); *Boudreaux v. J.P. Morgan Chase & Co.,* 2007 U.S. Dist. LEXIS 86686, 2007 WL 4162908, at *2 (E.D. La. Nov. 21, 2007) (holding that written report was not required for "treating physician whose testimony and opinions derive from information learned during actual treatment of the patient").

Where a physician's opinion testimony is based on his personal knowledge of the party's treatment, the reasons for requiring an expert report are presumed to be "far less compelling," and imposing the report requirement is thought to "unfairly burden a non-party who is appearing

principally because [he] has witnessed certain events relevant to the lawsuit." *See KW Plastics v. U.S. Can Co., 199 F.R.D. 687, 689 (M.D. Ala. 2000).*

Plaintiff would submit that his treating physicians, Dr. Neal Romero and Dr. Scott Gammel, should be allowed to testify as to their medical treatment and recommendations as well as their medical opinions relating to such treatment, and after the plaintiffs expert report deadline, as this medical testimony is based on the physician's personal knowledge acquired during their treatment of plaintiff, and that as such, they are exempt from the expert reporting requirements set forth in Fed. R. Civ. P. 26(a)(2)(A) and (B). In this case, both Dr. Romero and Dr. Gammel continued to treat the plaintiff and gain knowledge about his physical condition. Moreover, Dr. Gammel has not stated that the plaintiff is at MMI, and as recently as April 1, 2015, performed a Radio Frequency Ablation on the plaintiff.

### Economic Loss

With respect to the plaintiff's ability to return to work, the defense has intimated its plan to argue that the plaintiff failed to mitigate his damages by not returning to work. However, as will be shown by his own testimony and the testimony of Dr. Gammel, the plaintiff's pain level and requirement for pain medication to control same is such that he could not return to any form of employment.

In this matter the plaintiff has made a claim for loss of future wages. At the time of the subject accident the plaintiff was 67 years old. Prior to the subject accident, the plaintiff's personal work plan was to work until the age of seventy-five. This work plan is clearly discussed in Stephanie Chalfin's report. Further, the plaintiff testified in his deposition that prior to this accident he was in good health and he planned to work as long as he was healthy. Prior to the subject accident, the plaintiff was in fact in good health and did not have any health issues which prevented him from working. Lastly, the plaintiff testified that there were other gentlemen working for his employer that were older than him.

### B.    Bozovic Marine, Inc.

Bozovic Marine, Inc., (hereinafter "Bozovic Marine") defendant, admits that, on November 13, 2012, Robert Deperrodil was a passenger aboard the M/V THUNDER STAR, a crew boat. On that date, Bozovic Marine owned and operated the vessel and the captain at the helm was Petar Bozovic. Captain Bozovic owned Bozovic Marine, along with his wife.

On the day of the accident, plaintiff was the only passenger aboard the vessel and when he boarded the vessel at the Newman dock in Venice, Louisiana, he immediately proceeded to the wheelhouse and remained in the wheelhouse up until the time of the accident. Plaintiff had been working in the Gulf of Mexico for 15 years; had the authority to instruct the vessel not to go out; saw all weather and sea conditions; and never objected to the voyage or suggested it was unsafe, at any time. Plaintiff was involved in an accident when the vessel hit a rogue wave while returning to the dock and plaintiff ended up on the deck of the vessel.

As a passenger, plaintiff's claims against defendant are for negligence under the General Maritime Law and he was owed the duty of reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 409, 3L.Ed.2d550 (1959);

*Gibboney v. Wright*, 517 F.2d 1054, 1059 (5th Cir. 1975); *Lavergne v. Chevron U.S.A., Inc.*, 782 F.Supp. 1163, 1169 (W.D.La. 1991), aff'd sub.nom, 980 F.2d 1444 (5th Cir. 1992); *Day v. Touchard, Inc.*, 712 So.2d 1072, 1077 (La. App. 5th Cir. 1998); *Counts v. Lafayette Crew Boats, Inc.*, 622 F.Supp. 299, 301 (W.D.La. 1983). However, the vessel owner is not an absolute insurer of a passenger's safety and a passenger also has an obligation and duty to exercise reasonable care and prudence. *Counts*, 622 F.Supp. at 301; Day, 712 So.2d at 1076. Furthermore, if it is plaintiff's position that conditions were dangerous or unsafe for the operation of the vessel or that the vessel should have never proceeded from protected waters, which is denied by defendant, the vessel owner has no duty to warn passengers of open and obvious dangers. *Counts*, 622 F.Supp. at 301; *The S.S. Serpa Pinto*, 45 F.Supp. 255 (D.C.N.Y. 1942).

Defendant also denies that it owed plaintiff a "high degree of care standard". This has been expressly rejected by the Fifth Circuit, which has held that a "ship owner owes to passengers a duty of exercising 'reasonable care under the circumstances of each case.'" *Smith v. Southern Gulf Marine Co. No 2, Inc.*, 791 F.2d 416, 420 (5th Cir. 1986).

Plaintiff also argues that Rule 6 of the Inland Navigation Rules applies and was violated. Defendant submits that Rule 6, by its clear language, is intended to avoid collisions with vessels and/or structures. There was no collision in this case – the vessel was on open waters and encountered a rogue wave.

Defendant denies that it was negligent. Alternatively, defendant avers that plaintiff was wholly or partially at fault for failing to intervene, if he felt the sea conditions were unsafe, and failing to properly brace himself or sit down on a settee in the wheelhouse or in the passenger area below, before the accident. Defendants further submit that plaintiff assumed the risk of his injuries. Under the maritime law, the Court will be required to allocate fault among the parties proportionately to the comparative degree of their fault. *United States v. Reliable Transfer Co, Inc.*, 421 U.S. 397, 95 S.Ct. 1708, 1715, 44 L.Ed. 2d 251(1975).

As a result of this accident, plaintiff claims that he sustained a compression fracture at L-1 and a herniated disc at L3-4. He ultimately underwent a fusion at L3-4. Defendant denies that the accident in question caused plaintiff's herniation at L3-4 and in fact, that herniation was documented in a CT scan which was performed on September 22, 2009 at Lourdes Medical Imaging. In addition, plaintiff had previously undergone a two level lumbar fusion at L4-5 and L5-S1 in the late 1980's and had further problems with his lower back in the fall of 2009. In fact, on December 23, 2009, plaintiff underwent a lumbar epidural steroid injection at the L3-4 level due to a disc herniation at that level. Plaintiff also reported to his physicians in November 2009 that he had already "wore out his back from his drilling employment".

Defendant also submits that plaintiff has failed to mitigate his damages. *Johnston v. Harris County Flood Control District*, 869 F.2d 1565, 1578 (5th Cir. 1989). He was advised by his treating orthopedic surgeon, Dr. Neil Romero, on July 30, 2014 and September 10, 2014 that he could return to light duty but he has failed to return to any type of employment.

With respect to future loss of wages, based upon his own economic expert, plaintiff's net earnings at the time of the accident were approximately $19.28 per hour and he has a 2.09 future work-life expectancy as of the date of trial. Since this is a General Maritime Law case, plaintiff

only has a claim for the recovery of net wages. *Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475 (5th Cir. 1984); *Culver v. Slater Boat Co.*, 722 F.2d 114, 117 (5th Cir. 1983). Defendant submits that plaintiff has no claim for future loss of wages because he is capable of returning to work and earning at least $19.28 per hour. Alternatively, any claim for future loss of wages should be discounted to account for plaintiff's potential future earnings.

Liberty Insurance Corporation has intervened in this lawsuit in order to recover the medical indemnity benefits that it has paid to plaintiff pursuant to the Longshore and Harbor Worker's Compensation Act. Defendant submits that Liberty has a lien on those expenses 33 U.S.C.A.§933(c). As a result of that lien a substantial amount of plaintiff's medical bills have been written down by his medical providers and they are not seeking any recovery from him for those bills. As such, defendant submits that the collateral source rule does not apply and plaintiff can only recovery the amount of the medical bills actually paid by Liberty, along with any bills he has paid out of pocket, if any. *Manderson v. Chett Morrison Contractors, Inc.*, 666 F.3d 373, 382 (5th Cir. 2012). In that case, the defendant argued that the appropriate amount for cure or medical expenses was the lesser amount that medical providers accepted as full payment from plaintiff's insurer. The Fifth Circuit agreed. 666 F.3d at 382. *See also, Sanchez v. Brooke,* 201 Cal.App. 4th 126, 142, 138 Cal. Rptr. 3d. 507, 519 (Cal.App. 2012)("the injured employee may not recover, as economic damages from a third party tortfeasor, medical fees that the provider has precluded, either by agreement or by law (including the statutory fee schedule), from collecting from the employer".)

Courts have held that plaintiffs cannot recover a portion of medical expenses which were contractually adjusted pursuant to the requirements of a Medicaid program. *See, Terrell v. Nanda*, 759 So.2d 1026, 1031 (La.App. 2nd Cir. 2000). The court in that case recognized that a plaintiff may ordinarily recover reasonable medical expenses, past and future, which he incurs as a result of an injury (*Id.* at p. 1030). However, the court also recognized that the term "incur" was defined as "to become liable for", citing Webster's College Dictionary and Webster's Ninth New Collegiate Dictionary. *Id.* In that case, the court recognized that there was no liability on the part of the plaintiff for expenses above those paid by Medicaid. We have the same situation here. There is no liability on the part of plaintiff to pay those expenses above those paid by the compensation carrier.

In arguing that plaintiff can recover the full amount of his medical expenses, plaintiff relies on *Davis v. Odeco, Inc.*, 18 F.3d 1237 (5th Cir. 1994) and a decision by Magistrate Judge Patrick Hanna in *Blanchard v. U.S.*, 2014 U.S.Dist. Lexis 131958, AMC2888 (W.D.LA. 2014). Defendants submit that neither of those cases is applicable.

In *Davis*, which was a Jones Act case, the defendants sought an offset for health insurance benefits that were funded by both the defendant and the plaintiff. The court specifically found that the health insurance was a fringe benefit. In our case, plaintiff has testified that he was not provided with any fringe benefits by his employer, Petroleum Engineers. In fact, an employer is required by law to secure payment of benefits that may be due under the Longshore and Harbor Worker's Compensation Act, 33 U.S.C. 904. This is not a fringe benefit, rather, it is a legal requirement. Furthermore, an employer who fails to secure LHWCA coverage through an authorized insurance carrier or fails to become an authorized self-insurer can become liable for penalties and imprisonment. 20 C.F.R.§703.3.

Plaintiff also argues that *Blanchard* controls and particularly language by the court that the application of the collateral source rule "would be no different if the plaintiff had received worker's compensation benefits or private health insurance benefits instead of cure." Respectfully, the court in *Blanchard* did not cite any case law for its reference to "worker's compensation benefits". Furthermore, in the instant case, plaintiff has not provided any case law where a plaintiff has received benefits under the Longshore and Harbor Worker's Compensation Act, the compensation carrier has intervened to assert its lien for those benefits, and the plaintiff has been allowed the recovery of his full medical bills, despite the fact that medical expenses have been written off or written down by providers and plaintiff has no obligation to pay them. Defendant submits that plaintiff is not entitled to such a windfall.

Defendant also submits that, pursuant to the Scheduling Order issued by this Court on July 21, 2014 (Rec. Doc. 51), any experts in this case, including medical experts, will not be allowed to testify to opinions not contained within their timely submitted reports. Record Document 51, Scheduling Order, p. 1. Furthermore, where expert testimony extends beyond the scope of doctor's personal knowledge as treating physicians, doctors must fully comply with Rule 26(a)(2). *Martin v. GEICO Gen. Ins. Co.*, 2002 WL34370891, at *1(N.D.Tex. Apr. 15, 2002). Furthermore, the treating-physician exception is limited to facts and circumstances developed during the care of the patient. *Lowery v. Spa Crafters, Inc.*, 2004 U.S. Dist. LEXIS 16072, 2004 WL1824380, at *2(W.D.Tex. Aug. 16, 2004).

Defendant had previously pled limitation of liability as a defense in its Answer to Complaint. (Rec. Doc. 5) Defendant is hereby withdrawing that defense.

Although plaintiff states in his Claims above, that he will need additional surgery and extensive future medical treatment, defendant has not received any medical report whatsoever, from any physician, indicating that plaintiff requires future surgery and will incur any medical expenses. In fact, his treating orthopedist has already testified that he has reached maximum medical improvement in connection with his back injuries and can return to light duty work.

## C.   Intervenor, Liberty Insurance Corporation

Intervenor, Liberty Insurance Corporation is the Longshore and Harbor workers' compensation insurer for the plaintiff's employer, Petroleum Engineers, Inc., pursuant to which Liberty Insurance Corporation has paid workers' compensation, indemnity and medical benefits to or on behalf of Mr. Robert dePerrodil as required by law under the provisions of the Longshore and Harbor Workers' Compensation Act, 33 USC § 901, *et seq.*, and as a result of the alleged injuries sustained in the alleged November 13, 2012 accident at issue. Liberty Insurance Corporation has filed an Intervention in this matter seeking recovery of indemnity benefits as well as medical expenses paid to and on behalf of Mr. dePerrodil pursuant to the Longshore and Harbor Workers' Compensation Act as a result of the work-related injuries sustained by Mr. dePerrodil on or about November 13, 2012.

Liberty Insurance Corporation was obligated to pay and has paid to and on behalf of Mr. dePerrodil, as of the filing of the instant Joint Pre-Trial Order herein, the sum of $52,882.84 in weekly indemnity benefits, as well $55,687.12 in medical expenses for a total lien amount of

$108,569.96 and is therefore subrogated to the rights of Mr. dePerrodil against Bozovic Marine, Inc., for this amount pursuant to 33 U.S.C.A. §933 of the Longshore and Harbor Workers' Compensation Act and seeks reimbursement for any and all amounts paid in indemnity and medical benefits to or on behalf of Mr. Robert dePerrodil, from the date of payment until reimbursed. Liberty Insurance Corporation maintains that it is subrogated to the interests of its insured and any recovery made by the plaintiff in this action and is further entitled to reimbursement by priority out of the proceeds of any settlement or judgment which may be reached in these proceedings. Liberty Mutual further reserves the right to update the amount of its Intervention at the time of trial for any additional indemnity or medical expenses paid by the time of trial.

Intervenor, Liberty Insurance Corporation further avers that it is entitled to judgment recognizing and confirming Intervenor's right to offset any future payments and medical expenses that may be otherwise legally due, and against the parties of such judgment that may be entered in favor of plaintiff, as is in excess of the payments that have been actually paid by Intervenor, Liberty Insurance Corporation, and all other relief the Court deems necessary. Intervenor further avers that any and all compensation payments and medical benefits made to or on behalf of Mr. Robert dePerrodil by Liberty Insurance Corporation pursuant to 33 USC § 901, et seq., are necessary and reasonable.

Counsel for plaintiff has agreed to stipulate to Liberty Insurance Corporation's intervention in the amount of $108,569.96, and which will be updated at the time of trial, as it pertains to the payment of indemnity benefits in the amount of $52,882.84 and medical expenses paid to and on behalf of Mr. dePerrodil in the amount of $55,687.12, pursuant to the Longshore and Harbor Workers' Compensation Act.

## 2.    **Procedural History and Posture:**

Plaintiff, Robert dePerrodil initially filed his Complaint on April 25, 2013. [Doc. 1] Thereafter, Bozovic Marine, Inc. filed an Answer on June 14, 2013 [Doc. 5] and Clayton Williams Energy, Inc. ("Clayton Williams") filed an Answer on July 10, 2013. [Doc. 8]. On October 23, 2013, defendant, Bozovic Marine, filed a Motion for Leave to file a Third Party Complaint against Mr. dePerrodil's employer, Petroleum Engineers, Inc. ("PEI") [Doc. 15]. Thereafter, on November 1, 2013, Liberty Insurance Corporation intervened and filed a Complaint in Intervention as the Longshore and Harbor Workers Compensation insurer for the plaintiff's employer, Petroleum Engineers, Inc., pursuant to which it has paid workers' compensation indemnity benefits and medical expenses to and on Mr. dePerrodil's behalf. [Doc. 19]. Both, PEI and Clayton Williams filed separate Motions for Summary Judgment on the issues of liability. [Doc. 54 and 56]. On March 5, 2015, this Honorable Court granted Clayton Williams' Motion for Summary Judgment [Doc. 62]. On March 10, 2015, this Honorable Court granted PEI's Motion for Summary Judgment as it was unopposed. [Doc. 63].

Bozovic Marine, Inc. has filed a Motion to Exclude the Untimely Expert Report and Associated Testimony of Dr. Randy Rice (Doc. 68) and the Court has set that motion for oral argument on May 14, 2015 (Doc. 69), which is two (2) business day before trial. The parties respectfully request that the Court consider that motion at the pre-trial conference, if possible.

Based on the foregoing, all parties have answered all claims and the matter has proceeded through its discovery to its current scheduled trial date of May 18, 2015. All parties stand ready for trial of this matter to proceed, as scheduled.

## 3.    Issues of Law:

1.    The nature and extent of plaintiff's injuries and damages?

2.    Is Defendant Bozovic Marine, Inc. and/or another party, including plaintiff, responsible/liable for the injuries sustained by Plaintiff?

3.    Did Plaintiff cause or contribute to his own injuries?

4.    Does Defendant, Bozovic Marine, Inc. and/or another party bear responsibility for the injuries suffered by Plaintiff?

5.    Was defendant, Bozovic Marine, through the actions of Captain Petar Bozovic, negligent in operating the crew boat vessel during weather conditions of severe high winds and seas?

6.    Was Captain Petar Bozovic negligent entering the Gulf of Mexico during heavy/dangerous sea conditions, when he knew that the lift vessel, L/V ATTITUDE was not on location?

7.    Was Captain Petar Bozovic negligent in operating the *M/V THUNDER STAR* at an excessive and erratic speed in heavy sea conditions?

8.    Was defendant, Bozovic Marine negligent in failing to confirm or verify that the L/V ATTITUDE was not on location prior to leaving the Newman Crane Dock in Venice, Louisiana?

9.    Was defendant, Bozovic Marine negligent in its decision to transport complainant during weather conditions of severe high winds and seas?

10.    Was defendant, Bozovic Marine negligent in failing to identify the severe high winds and seas prior to leaving port?

11.    What is the amount, if any, of damages Plaintiff, Robert dePerrodil, is entitled to?

12.    Whether plaintiff assumed the risk of his injuries?

13.    Whether plaintiff has failed to mitigate his damages?

14.    Whether the collateral source rule applies to plaintiff's claims for past medical expenses and whether plaintiff can only recover the actual medical expenses paid and not the write downs or write offs that he has no obligation to pay?

15.    Whether any experts in this case, including medical experts, can testify to opinions not contained within their timely submitted reports?

16.    What is the plaintiff's total economic loss?

### Intervenor:

1.    Whether Liberty Insurance Corporation is subrogated to the rights of Mr. dePerrodil for the total intervention amount of $108,569.96, pursuant to the Longshore and Harbor Workers' Compensation Act.

2.    Whether Liberty Insurance Corporation is entitled to reimbursement by priority out of the proceeds of any settlement or judgment which may be reached in this proceeding.

3.    Whether Intervenor, Liberty Insurance Corporation is entitled to offset any future payments and medical expenses that may be otherwise legally due to Mr. dePerrodil, against such judgment that may be entered in favor of plaintiff, as is in excess of the payments that have been actually paid by Intervenor.

## 4.    Thumbnail Sketch of Facts:

### By Plaintiff:

On or about November 13, 2012, complainant, Robert dePerrodil, was employed by and working for Petroleum Engineers, Inc., as a consultant. Complainant, Robert dePerrodil was being transported by the *M/V THUNDER STAR*, a small crew boat vessel, which upon information and belief was owned and operated by defendant, Bozovic, when the accident occurred.

The accident at issue occurred on or about November 13, 2012, when complainant was being transferred, via the *M/V THUNDER STAR*, from the Port of Venice to the Superior L/V ATTITUDE. On November 13, 2012, the L/V ATTITUDE was supposed to be on location at the Clayton Williams Main Pass 48 platform. However, it was not on location due to the severe weather conditions.   Prior to leaving the port of Venice, the captain of the *M/V THUNDER STAR* was unaware of the location of the L/V ATTITUDE, and the severe weather conditions in the Gulf of Mexico. While still in the protected waters of the Bayou Baptiste Collette and its coast line, the captain of the *M/V THUNDER STAR* could see and was aware that the L/V ATTITUDE was not on location. However, Captain Bozovic directed the *M/V THUNDER STAR* into the unprotected waters of the Gulf of Mexico, whereupon it encountered extremely severe seas and high winds, which pounded the small crew boat and its crew and passengers. Bozovic and its captain, now aware of the heavy seas and/or impending bad weather, nevertheless directed the *M/V THUNDER STAR* out into the Gulf of Mexico. Within one mile of the platform, the captain of the *M/V THUNDER STAR* could not locate the L/V ATTITUDE in order to drop complainant off and turned around to head back into port. Defendant, Bozovic's captain was negligent in operating his vessel in an improper manner and at an excessive rate of speed

(full throttle) for the then prevailing sea conditions and the small size of the vessel *M/V THUNDER STAR*. Captain Bozovic was also negligent in attempting to enter the Gulf of Mexico when he knew or should have known that it was unsafe and dangerous to his passengers, namely complainant, Robert dePerrodille, to do so.

While in the process of returning to port, Complainant, Robert dePerrodil was violently thrown from his position and landed on the floor of the wheelhouse resulting in severe and disabling injuries. Captain Petar Bozovic and Bozovic Marine were negligent in failing to check the weather-sea conditions prior to attempting to enter the Gulf of Mexico with Complainant, as well as in the operation of their vessel.

As a result of the accident described herein, complainant, Robert dePerrodil, sustained serious, permanent, and crippling injuries, including, but not limited to, a laceration to his left hand, compression fractures in his lumbar spine, ruptured lumbar disc's, all of which have necessitated a lumbar fusion surgery, Radio Frequency Ablation (RFA), and will necessitate additional surgery and extensive future medical treatment.

## By Defendant:

This is a General Maritime Law claim for negligence by a passenger aboard the M/V THUNDER STAR. Plaintiff was a few days short of 67 years of age, at the time of the accident, and will be 70 years old this year. Defendant submits that at all pertinent times, plaintiff was in the wheelhouse of the vessel and all weather and sea conditions were known to him and were open and obvious. Plaintiff had the authority to instruct the vessel not to go out but never objected to the voyage or suggested it was unsafe, at any time. An accident occurred when the vessel hit a rogue wave while returning to the dock and plaintiff ended up on the deck of the vessel. Plaintiff failed to take adequate precautions for his own safety and defendant submits that the court will have to apportion fault between all parties, in connection with this incident.

With respect to injuries, defendant submits that plaintiff sustained a compression fracture at the L-1 level. However, his herniated disc at the L3-4 level preexisted this accident and was documented by way of a lumbar CT scan that was performed in September of 2009. In the event that damages are awarded, plaintiff's damages should be limited to the L-1 compression fracture.

With respect to plaintiff's claim for past and future loss of wages, defendants submit that plaintiff is capable of returning to work and therefore has no claim for future loss of wages or, otherwise, it should be severely diminished to account for his future potential earnings. Plaintiff has also failed to mitigate his damages by not returning to work, although he has been discharged several times to light duty by his treating orthopedic surgeon. Any award of general damages should also be limited due to plaintiff's age. In addition, defendant submits that plaintiff can only recover the actual amount of medical bills that have been paid by the worker's compensation carrier and the collateral source rule does not apply because plaintiff has no obligation to pay for any bills that have been written down by his medical providers. Defendant also denies that plaintiff will need additional surgery and extensive future medical treatment. Defendant has no evidence to date to suggest that is the case, but rather, plaintiff has been active and has been deer hunting in multiple states, purchasing a truck and 4-wheeler, and doing yard work. Plaintiff is clearly capable to returning to some form of employment.

Plaintiff had a net income of $40,078.25 per year at the time of the accident which is the equivalent of $19.28 per hour. Plaintiff is capable of returning to work earning that hourly rate or more.

### Intervenor:

As a result of the November 13, 2012, work-related accident and alleged injuries sustained by plaintiff, Mr. Robert dePerrodil, intervenor, Liberty Insurance Corporation as the Longshore and Harbor workers' compensation insurer for the plaintiff's employer, Petroleum Engineers, Inc., was required to and has paid workers' compensation, indemnity and medical benefits to and on behalf of Mr. Robert dePerrodil as required by law under the provisions of the Longshore and Harbor Workers' Compensation Act, 33 USC § 901, *et seq.* Liberty Insurance Corporation has paid to and on behalf of Robert dePerrodil the sum of $52,882.84 in indemnity benefits and $55,687.12 in medical expenses, for a total sum of $108,569.96, pursuant to the Longshore and Harbor Workers' Compensation Act.

As a result of the plaintiff's injuries sustained in the accident at issue, Liberty Insurance Corporation may be required to pay further indemnity benefits and medical expenses to or on behalf of Mr. dePerrodil and therefore reserves the right to update the amount of its Intervention at the time of trial.

## 5.   Stipulations:

### Plaintiff:

1.   Complainant, Robert dePerrodil was an independent contractor working for Petroleum Engineers, Inc.

2.   On the date of accident, November 13, 2012, complainant, Robert dePerrodil, was being transported by the *M/V THUNDER STAR*, a crew boat.

3.   On the date of accident, November 13, 2012, the *M/V THUNDER STAR* was owned and being operated by defendant, Bozovic Marine, Inc.

4.   On the date of the accident at issue, Petar Bozovic, was an owner of BOZOVIC MARINE, INC. and the captain of the *M/V THUNDER STAR*.

5.   On the date of accident, November 13, 2012, complainant, Robert dePerrodil, was a passenger aboard the *M/V THUNDER STAR.*

6.   Petar Bozovic was the captain at the helm of the M/V THUNDER STAR at the time of the accident.

7.   The Court entered summary judgment in favor of third party defendant, Petroleum Engineers, Inc. on March 10, 2015 [Doc. 63], and they have been dismissed from the above captioned matter.

8. The Court entered summary judgment in favor of third party defendant, Clayton Williams Energy, Inc. on March 5, 2015 [Doc. 66], and they have been dismissed from the above captioned matter.

9. The parties have agreed that they will stipulate to the amount of medical bills incurred, the amount of medical bills paid by Liberty Insurance Corporation, as the intervenor, and the amount of medical bills that have been written off or written down by the medical providers and accepted by the providers as full payment. . This stipulation will also include the amount of medical bills paid by Bozovic in the amount of $1,112.00.

## Intervenor:

1. Liberty Insurance Corporation was the Longshore and Harbor workers' compensation insurer for Mr. dePerrodil's employer, Petroleum Engineers on November 13, 2012.

2. As a result of Mr. Robert dePerrodil's November 13, 2012 accident as alleged, Liberty Insurance Corporation was obligated pursuant to law to pay workers' compensation, indemnity and medical benefits.

3. Liberty Insurance Corporation has paid, and continues to pay, workers' compensation, indemnity and medical benefits to or on behalf of Mr. Robert dePerrodil as required by law under the provisions of the Longshore and Harbor Workers' Compensation Act, 33 USC § 901, *et. seq.*

4. Liberty Insurance Corporation is subrogated to the rights of Mr. dePerrodil and against Bozovic Marine, pursuant to 33 USC § 901, *et. seq.*, for any amounts that it may pay in benefits and expenses.

5. Pursuant to 33 USCA § 933 of the Longshore and Harbor Workers' Compensation Act, Liberty Insurance Corporation is entitled to be paid first out of any judgment or settlement in an amount sufficient to reimburse it on all such benefits and expenses from the date of payment until reimbursed.

6. Liberty Insurance Corporation is entitled to a judgment regarding its right to a future credit based on Mr. dePerrodil's net recovery from this matter.

7. Liberty Insurance Corporation is entitled to its right to offset any future payments and medical expenses that may be due to the plaintiff and against the parties of a judgment that may be entered in favor of plaintiff and that are in excess of the payments actually paid by Liberty Insurance Corporation.

8. Liberty Insurance Corporation has paid to and on behalf of Robert dePerrodil the sum of $52,882.84 in indemnity benefits and $55687.12 in medical expenses, for a total sum of $108,569.96 pursuant to the Longshore and Harbor Workers' Compensation Act.

9. Liberty Insurance Corporation will update the amount of its Intervention at the time of trial.

## 6. **Witnesses:**

### **Plaintiff:**

a. Robert dePerrodil – Mr. dePerrodil will testify as to the accident and injuries that are the subject matter of this litigation.

b. Paula dePerrodil – Mrs. dePerrodil will testify as to Robert dePerrodil's pre-accident condition, post-accident physical condition, and the injuries which are the subject matter of this litigation.

c. Captain Petar Bozovic – Capt. Bozovic will testify as to his knowledge surrounding the accident and injuries that are the subject matter of this litigation.

d. Mahlon LeBlanc – Mr. LeBlanc will testify as to his knowledge surrounding the accident and injuries that are the subject matter of this litigation, the plaintiff's work history and work ethic.

e. Ray Badon – Mr. Badon may testify regarding his experience in the offshore industry.

f. Donald Badon – Mr. Badon may testify regarding his experience in the offshore industry.

g. Ms. Stephanie Chalfin - Ms. Chalfin will testify as a vocational rehabilitation expert, regarding plaintiff's pre-accident employment, and post-accident employability and vocational aptitude.

h. G. Randolph Rice, Ph.D - Dr. Rice will testify as an expert economist, regarding plaintiff's past lost earnings, benefits and meals, as well as any and all future lost earnings or earning capacity, benefits and meals.

i. Mr. Richard Frenzel - Mr. Frenzel may testify as a marine operations expert, as to the facts and circumstances surrounding the accident, the safety precautions taken or not taken by defendants, the condition of the vessel and its operator, the cause of the accident, preventive measures, applicable rules and regulations, and any other opinions pertaining to the cause and prevention of the accident at issue.

j. Dr. Neil Romero - Dr. Romero will testify (via deposition taken on April 1, 2015) as to the injuries suffered by plaintiff, as well as any and all present and future medical treatment, future medical restrictions and/or limitations.

k. Dr. Scott Gammel – Dr. Gammel will testify (via deposition taken on April 8,

2015) as to the injuries suffered by plaintiff, as well as any and all present and future medical treatment, future medical restrictions and/or limitations.

l.    Benton Scott – Mr. Scott may testify regarding his experience in the offshore industry.

m.    Bennett Scott – Mr. Scott may testify regarding his experience in the offshore industry.

n.    Any and all other witnesses listed by any other party.

### Defendant:

a.    Captain Petar Bozovic – Will testify concerning any and all facts concerning the subject action, the conduct of plaintiff, and the weather conditions.

b.    Barry Sobel – May testify concerning any and all facts concerning the subject action, the conduct of plaintiff, and the weather conditions.

c.    Dr. John Martin – Will testify by deposition concerning the medical treatment he provided to plaintiff in 2009.

d.    Nancy Favaloro – Will testify as a vocational rehabilitation expert, regarding plaintiff's past and future employment and employment opportunities and earnings.

e.    Dr. Douglas Bernard – Orthopedic surgeon – Will testify concerning his evaluation of plaintiff. (Defendant is attempting to schedule his deposition at this time.)

f.    Roxanne Guillot – Representative of Our Lady of Lourdes Regional Medical Center will testify concerning medical bills and write offs, write downs and balances issued by that facility.

g.    Travis Trahan – Investigator with Terrell Miceli, P.O. Box 1955, Slidell, Louisiana 70459 – may testify regarding surveillance, video and photographs obtained in December 2014 and January 2015.

h.    Any and all other witnesses listed by any other party.

### Intervenor:

If a stipulation regarding the intervention and Liberty Insurance Corporation's subrogation rights has not been reached at the time of trial, the following witness will be called:

Ms. Michelle Bourdage
Liberty Mutual Group
PO Box 490
East Syracuse, NY 13057
1-800-962-5157 ext. 23152

or other representative of Liberty Insurance Corporation, who may testify regarding medical and indemnity benefits paid to and on behalf of Mr. Robert dePerrodil, pursuant to the Longshore and Harbor Workers' Compensation Act as a result of the November 13, 2012 accident.

7.   **Exhibits:**

**Plaintiff, Robert dePerrodil:**

1.   Any and all photographs taken by any party of the vessel of the M/V THUNDER STAR.

2.   Robert dePerrodil's consultant invoices for the year of 2012.

3.   The vessel specifications for the M/V THUNDER STAR.

4.   The expert reports of Ms. Stephanie Chalfin.

5.   The expert report of Mr. Richard Frenzel.

6.   The expert reports of G. Randolph Rice.

7.   The Petroleum Engineers, Inc. Independent Contract Agreement.

8.   2010-2014 Income Tax Returns of Robert dePerrodil.

9.   Certified Copies of the Social Security Administration – Earnings Report for Robert dePerrodil.

10.   Any and all Robert dePerrodil's work invoices.

11.   All employment records of Robert dePerrodil received from Petroleum Engineers, Inc./ Hamilton Engineering, Inc.

12.   Petroleum Engineer's First Report of Injury.

13.   Bozovic Marine -Daily Boat Logs.

14.   Certificate of Inspections of the M/V THUNDER STAR.

15. Selected vessel logs from the M/V THUNDER STAR.

16. Bozovic Marine, Inc. – RLI Marine Policy (Policy # HUL0200091).

17. Any and all discovery responses received from defendants, Bozovic Marine, Inc., Clayton Williams Energy, Inc., and/or Petroleum Engineers, Inc.

18. Bozovic Marine invoice to Madre & Sons Marine Rental Corporation.

19. Any and all documents submitted by Madre & Sons Marine Rental.

20. Robert dePerrodil's recorded statement taken on November 27, 2012 by Pierre Gautreaux.

21. Itemized Medical Summary reflecting total medical expenses incurred by plaintiff as a result of the accident at issue.

22. Itemized invoices and/or quotes reflecting the costs for the Radio Frequency Ablation medical treatment that Dr. Scott Gammal is recommending that plaintiff undergo into the future.

23. Medical records, expense and bills of Robert dePerrodil and reflecting medical treatment and charges from the following health care providers:

    a.    Dr. Neal Romero – Louisiana Orthopedic Specialists;
    b.    Park Place Surgical Hospital;
    c.    Plaquemine's Medical Center;
    d.    Our Lady of Lourdes Regional Medical Center;
    e.    Jennings American Legion Hospital;
    f.    Dr. Thomas Bond - Total Health & Care Wellness Medical Center;
    g.    Dr. Scott Gammel – Anesthesiology and Pain Consultants;
    h.    Dr. John Schutte;
    i.    Dr. Ricardo Leoni;
    j.    Dr. Joe Morgan – Bone and Joint Clinic in Baton Rouge;
    k.    Dr. Douglas Bernard – Iberia Orthopedic Group;
    l.    Acadiana IntraOperative Monitoring
    m.    Professional Anesthesia Services;
    n.    Jeff Davis Imaging;
    o.    Dr. Joseph Brierre
    p.    Medical Imaging Associates;
    q.    Acadiana Radiology Group
    r.    Rehab Services of Vermilion
    s.    Health Mart Pharmacy
    t.    Jeff Davis Radiology Associates;
    u.    Pathology Associates of Mid La.
    v.    Clinical Pathology Associates
    w.    Progressive Medical

24.    Deposition testimony of Petar Bozovic for impeachment purposes

25.    Deposition testimony of Dr. John Martin, with attachments.

26.    Any and all exhibits listed by any other party.

## Defendant:

1.     Plaintiff's Answers to Interrogatories propounded by Defendant, Bozovic Marine, Inc.

2.     Photograph of wheelhouse of M/V THUNDER STAR (Deperrodil – 5).

3.     Photograph of wheelhouse of M/V THUNDER STAR (Deperrodil – 6).

4.     Photograph of wheelhouse of M/V THUNDER STAR (Deperrodil – 7).

5.     Photograph of wheelhouse of M/V THUNDER STAR (Deperrodil – 8).

6.     Photograph of wheelhouse of M/V THUNDER STAR (Deperrodil – 9).

7.     Photograph of passenger area of M/V THUNDER STAR (Deperrodil – 10).

8.     Transcript of statement obtained of Robert Deperrodil by Pierre Gautreaux on November 27, 2012.

9.     Independent contractor agreement between plaintiff and Petroleum Engineers, Inc.

10.    Statement provided by plaintiff to Mr. Gaar, dated January 7, 2013. (For impeachment)

11.    Photograph of wheelhouse of M/V THUNDER STAR (Bozovic-2).

12.    Photograph of wheelhouse of M/V THUNDER STAR (Bozovic-3).

13.    Photograph of passenger area of M/V THUNDER STAR (Bozovic-4).

14.    Photograph of dashboard in wheelhouse (Bozovic-5).

15.    Photograph of captain's chair (Bozivic-7).

16.    Photograph of location (Bozovic-8).

17.    Report of Bozovic Marine dated November 16, 2012 (Bozovic-9).

24

18. Rough logs of M/V THUNDER STAR (Bozovic-10).

19. Smooth logs of M/V THUNDER STAR (Bozovic-11).

20. Photograph of windows in wheelhouse (Bozovic-12).

21. Photograph of Captain Bozovic in wheelhouse (Bozovic-13).

22. Deposition of Robert Deperrodil (for impeachment).

23. Update deposition of Mr. Deperrodil (for impeachment).

24. Deposition of Dr. John Martin, with attachments.

25. Checks of Bozovic Marine issued to Acadian Orthopedic Center and Plaquemines Medical Center.

26. String of e-mails exchanged between plaintiff's counsel and Dr. Rice.

27. Photograph of Captain Bozovic in wheelhouse, against port bullwerk.

28. Photograph of Captain Bozovic in wheelhouse, against port bullwerk.

29. Photograph showing measurement on port side of vessel.

30. Photograph of Captain Bozovic bracing himself.

31. Photograph of Captain Bozovic bracing himself.

32. Photograph of Captain Bozovic bracing himself.

33. Photograph of outboard profile of M/V THUNDER STAR.

34. Statement of Barry Sobel (for impeachment).

35. Medical bills of plaintiff, including write downs.

36. Summary of write downs on medical bills.

37. Report concerning September 22, 2009 lumbar MRI.

38. CD or films from September 2009 lumbar MRI.

39. Deposition of Dr. Douglas Bernard, with attachments.

40. Video and photographs of surveillance obtained on December 29 and 30, 2014.

41.   Report of Terrell Miceli Investigations, dated January 29, 2015.

42.   Summary of write offs for medical expenses.

43.   Deposition of Robert Deperrodil – for impeachment.

44.   Follow up deposition of Robert Deperrodil – for impeachment.

45.   String of e-mails exchanged between plaintiff's counsel and Dr. Rice concerning his untimely report of April 2, 2015.

46.   Any exhibits listed by any other party.

**Intervenor:**

If a stipulation regarding the intervention and Liberty Insurance Corporation's subrogation rights has not been reached at the time of trial, the following exhibits will be used at trial to substantiate the total amount paid in indemnity benefits and medical expenses to Mr. dePerrodil:

1. Printout or other listing of amounts paid in medical expenses and indemnity benefits pursuant to the Longshore and Harbor Workers' Compensation Act.

2. Copies of any and all cancelled checks depicting payments made to health care providers in the form of medical benefits pursuant to the Longshore and Harbor Workers' Compensation Act.

3. Copies of any and all cancelled checks issued by Liberty Insurance Corporation to Robert dePerrodil for indemnity benefits.

4. Copies of any and all medical bills/invoices paid by Liberty Insurance Corporation to or on behalf to Robert dePerrodil.

5. If necessary, relevant portions of Workers' Compensation/ Employer's Liability Insurance policy issued to Petroleum Engineers by Liberty Insurance Corporation.

6. Stipulation of the parties concerning amounts paid to and on behalf of Robert dePerrodil pursuant to the Longshore and Harbor Workers' Compensation Act.

**8.   Objections to Witness and Exhibit Lists:**

**Plaintiff:**

Plaintiff objects to Defendant's exhibits as follows:

26

1.   The statement of Barry Sobel (objection, inadmissible, hearsay, and it has never been produced despite discovery requests for same);

2.   String of e-mails exchanged between plaintiff's counsel and Dr. Rice (objection this is confidential communications between plaintiff's counsel and his expert).

3.   Statement provided by plaintiff to Mr. Gaar, dated January 7, 2013 (objection, attorney-client privileged communications);

4.   Expert report of Nancy Favaloro (objection, inadmissible, hearsay).

**Defendant:**

Defendant objects to Plaintiff's exhibits as follows:

2.   Photographs of plaintiff's injuries (objection, these have not yet been produced)

4.   Expert report of Ms. Stephanie Chalfin (objection, inadmissible, hearsay).

5.   Expert report of Mr. Richard Frenzel (objection, inadmissible, hearsay).

6.   Expert report of Dr. Randy Rice (objection, inadmissible, hearsay).

16.  Insurance policy issued to Bozovic Marine, Inc. (objection, irrelevant, RLI Insurance Company is not a party to this case).

17.  Any and all discovery responses received from defendants, Bozovic Marine, Inc., Clayton Williams Energy, Inc. and/or Petroleum Engineers, Inc. (objection, the specific documents plaintiff seeks to introduce must be reviewed by defendant.)

19.  Any and all documents submitted by Madere & Sons Marine Rental (objection, the specific documents plaintiff seeks to introduce must be reviewed by defendant.)

9.   **For Bench Trials:**

The parties agree to submit two bench books 7 days prior to trial.

10.  **For Jury Trials:**

N/A

11.  **Editing Trial Depositions/Filing Objections:**

The parties will submit trial depositions ten (10) days prior to trial.

27

**12.** **Counsel Affirmations:**

Counsel affirm that they are aware that exhibits are to be published to the jury by way of CD-ROM or the Visual Presenter unless consent of the Court is obtained upon a showing of impracticality or prejudice.

a.   Counsel affirm that they are familiar with the Visual Presenter and its operation.

b.   Counsel affirm that if the case is deemed "document intensive" that they will place the documents on CD-ROM.

c.   Counsel affirm that final good faith settlement negotiations have been engaged one week prior to the Pretrial Conference.

d.   Counsel affirm that they understand that failure to comply with any requirements of the Federal Rules of Civil Procedure, the Scheduling Order, or other orders of this Court, will risk the imposition of the sanctions provided for by the Federal Rules of Civil Procedure.

e.   Counsel affirm that they do not need handicap provisions at the trial of this matter.

**I HEREBY CERTIFY THAT THE FOREGOING IS ACCURATE AND COMPLETE.**

JOSEPH F. GAAR, JR.
JASON M. WELBORN
JACOB H. HARGETT

DATE 4/20/15

GEORGES M. LEGRAND
JORDAN G. McFAULL

DATE 4/20/15

SCOTT B. KIEFER
DAWN D. MARULLO

DATE

28

**12.  Counsel Affirmations:**

Counsel affirm that they are aware that exhibits are to be published to the jury by way of CD-ROM or the Visual Presenter unless consent of the Court is obtained upon a showing of impracticality or prejudice.

a.  Counsel affirm that they are familiar with the Visual Presenter and its operation.

b.  Counsel affirm that if the case is deemed "document intensive" that they will place the documents on CD-ROM.

c.  Counsel affirm that final good faith settlement negotiations have been engaged one week prior to the Pretrial Conference.

d.  Counsel affirm that they understand that failure to comply with any requirements of the Federal Rules of Civil Procedure, the Scheduling Order, or other orders of this Court, will risk the imposition of the sanctions provided for by the Federal Rules of Civil Procedure.

e.  Counsel affirm that they do not need handicap provisions at the trial of this matter.

**I HEREBY CERTIFY THAT THE FOREGOING IS ACCURATE AND COMPLETE.**

JOSEPH F. GAAR, JR.                               DATE
JASON M. WELBORN
JACOB H. HARGETT

GEORGES M. LEGRAND                          DATE
JORDAN G. McFAULL

SCOTT B. KIEFER                                      4/21/15
DAWN D. MARULLO                               DATE

28